IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT
HOUSTON DIVISION

| | |
|---|---|
| ACLU FOUNDATION OF TEXAS, INC., | ) Case No. _____ |
| Plaintiff, | ) |
| v. | ) **JURY TRIAL REQUESTED** |
| U.S. CUSTOMS AND BORDER PROTECTION and U.S. DEPARTMENT OF HOMELAND SECURITY, | ) |
| Defendants. | ) |

**PLAINTIFF ACLU FOUNDATION OF TEXAS, INC.'S COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF FOR VIOLATION OF THE FREEDOM OF INFORMATION ACT, 5 U.S.C. § 552 et seq.**

**INTRODUCTION**

1. This case challenges the government's refusal to respond to a Freedom of Information Act request seeking details about the U.S. Customs and Border Protection's detention of travelers at international airports in Dallas and Houston pursuant to the President's unconstitutional Muslim ban. We bring suit under FOIA with the aim to vindicate our fundamental democratic values of transparency and government accountability. As the Supreme Court has observed, an informed citizenry is "vital to the functioning of a democratic society" and "needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber*, 437 U.S. 214, 242 (1978). In this instance, the American public has the right to know how the ban was implemented in Texas.

2. The ACLU Foundation of Texas, Inc. ("Plaintiff" or "ACLU") brings this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq*., as amended, to obtain injunctive and other appropriate relief requiring Defendants U.S. Department of Homeland Security ("DHS") and U.S. Customs and Border Protection ("CBP") (collectively, "Defendants") to respond to a FOIA request sent by Plaintiff on February 6, 2017 ("Request"), and to promptly

1

disclose the requested records.

3.  The Request seeks records concerning CBP's local implementation of President Trump's January 27, 2017 Executive Order titled "Protecting the Nation From Foreign Terrorist Entry Into the United States," Exec. Order No. 13769, 82 Fed. Reg. 8977 (Feb. 1, 2017) ("Executive Order"), as well as any other judicial order or executive directive issued regarding the Executive Order on or after January 27, 2017.[1] A true and correct copy of the Request is attached as **Exhibit A**.

4.  Specifically, the Request seeks records concerning CBP's local implementation of the Executive Order at sites within the jurisdiction of CBP's Houston Field Office. These include, but are not limited to, Dallas/Fort Worth International Airport ("DFW"), Bush Intercontinental Airport ("IAH"), and the Houston Airport and Dallas/Ft. Worth Ports of Entry ("Port of Entry Offices").

## BACKGROUND

5.  Among other things, the Executive Order purports to halt refugee admissions and bar entrants from several predominantly Muslim countries from entering the United States.

6.  Defendants' implementation of the Executive Order has been the subject of significant public concern, as reflected by mass protests around the country, substantial news coverage, and numerous lawsuits filed following the President's signing of the Executive Order.

7.  Over the weekend of January 27–29, 2017, at least five lawsuits resulted in emergency court orders enjoining implementation of various sections of the Executive Order.[2]

---

[1] Request 1(m) would include President Trump's March 6, 2017 Executive Order, identically titled, Exec. Order No. 13780, 82 Fed. Reg. 13209 (Mar. 6, 2017), which significantly references the January 27 Executive Order. *See* Ex. A.

[2] *Vayeghan v. Kelly*, No. CV 17-0702, 2017 WL 396531 (C.D. Cal. Jan. 29, 2017); *Tootkaboni v. Trump*, No. 17-CV-10154, 2017 WL 386550 (D. Mass. Jan. 29, 2017); *Doe v. Trump*, No. C17-126, 2017 WL 388532 (W.D. Wash. Jan. 28, 2017); *Aziz v. Trump*, No. 1:17-CV-116, 2017 WL 386549 (E.D. Va. Jan. 28, 2017); *Darweesh v. Trump*, No. 17 CIV. 480 (AMD), 2017 WL 388504 (E.D.N.Y. Jan. 28, 2017). On March 15, 2017, a district court enjoined implementation of Sections 2 and 6 of the President's identically named March 6 Executive Order. *Hawai'i v. Trump*, No. CV 17-00050 DKW-KSC, 2017 WL 1011673 (D. Haw. Mar. 15, 2017).

8. News reports described Defendants' implementation of the Executive Order as "chaotic" and "total[ly] lack[ing] . . . clarity and direction."[3]

9. Official DHS statements reflected this confusion. For example, DHS stated on January 28 that the Executive Order would "bar green card holders."[4] The next day, however, DHS Secretary John Kelly deemed "the entry of lawful permanent residents to be in the national interest"[5] and the government clarified that the Executive Order did *not* apply to green card holders.[6]

10. Reportedly spurred by this chaos, on January 29, Senators Tammy Duckworth and Dick Durbin called upon the Office of the Inspector General of the Department of Homeland Security to investigate Defendants' implementation of the Executive Order.[7] The Senators specifically sought information regarding: any guidance Defendants provided to the White House in developing the order; any directions that were provided to Defendants in implementing it; whether CBP officers complied with the relevant court orders; and whether DHS and CBP officers kept a list of individuals that they had detained at ports of entry under the order. In response, the Inspector General directed Defendants' personnel to preserve all records "that

---

[3] *See, e.g.*, Ryan Devereaux *et al.*, *Homeland Security Inspector General Opens Investigation of Muslim Ban, Orders Document Preservation*, THE INTERCEPT, Feb. 1, 2017, *available at* https://theintercept.com/2017/02/01/homeland-security-inspector-general-opens-investigation-of-muslim-ban-rollout-orders-document-preservation/.

[4] *See* Max Greenwood, *Immigration Ban Includes Green Card Holders: DHS*, THE HILL, Jan. 28, 2017, *available at* http://thehill.com/policy/national-security/316670-trump-refugee-ban-bars-green-card-holders-report.

[5] *Statement By Secretary John Kelly On The Entry Of Lawful Permanent Residents Into The United States*, DEP'T OF HOMELAND SECURITY (Jan. 29, 2017), *available at* https://www.dhs.gov/news/2017/01/29/statement-secretary-john-kelly-entry-lawful-permanent-residents-united-states.

[6] *See* Robert Mackey, *As Protests Escalate, Trump Retreats From Barring Green Card Holders*, THE INTERCEPT, Jan. 29, 2017, *available at* https://theintercept.com/2017/01/29/trumps-executive-order-no-longer-bars-green-card-holders/.

[7] *See* Ryan Devereaux *et al.*, *Homeland Security Inspector General Opens Investigation of Muslim Ban, Orders Document Preservation*, THE INTERCEPT, Feb. 1, 2017, *available at* https://theintercept.com/2017/02/01/homeland-security-inspector-general-opens-investigation-of-muslim-ban-rollout-orders-document-preservation/.

might reasonably lead to the discovery of relevant information relating to the implementation of" the Executive Order.[8]

11. Beginning on Saturday, January 28, CBP officers at DFW began to detain travelers pursuant to the Executive Order. A total of thirteen individuals were detained on Saturday pursuant to the Executive Order,[9] nine of whom were detained overnight into Sunday in excess of twenty-four hours.[10]

12. While detained, travelers were pressured into signing papers to voluntarily withdraw their admission into the United States.[11]

13. Attorneys who tried to assist the detained individuals throughout Saturday and Sunday were consistently denied access by CBP officials.[12]

14. After the thirteen individuals detained at DFW into Sunday were released, CBP continued to detain travelers from the countries identified in the Executive Order for many hours.[13] Detainees included a 33-year-old Iraqi man in a wheelchair, who was detained for

---

[8] *Id.*

[9] Diane Smith, *Detainees at DFW Released, but 'This is Going to be a Day-to-Day Challenge'*, FORT WORTH STAR TELEGRAM, Jan. 29, 2017, http://www.star-telegram.com/news/local/community/northeast-tarrant/article129449349.html.

[10] Mark D. Smith, *Lawyers at DFW Airport Staying 'Until the Job is Done'*, FORT WORTH STAR TELEGRAM, Feb. 1, 2017, http://www.star-telegram.com/news/local/community/northeast-tarrant/article130100174.html; Julieta Chiquillo, *Detained Travelers at DFW Airport Are Released, Reunited with Families*, DALL. MORNING NEWS, Jan. 29, 2017, http://www.dallasnews.com/news/donald-trump-1/2017/01/29/aclu-lawyers-working-free-travelers-detained-dfw-airport-trumps-ban; *Detainees at DFW Airport Released By Customs*, CBSDFW, Jan. 29, 2017, http://dfw.cbslocal.com/2017/01/29/detainees-at-dfw-airport-to-be-released/.

[11] Letter from Center for Constitutional Rights and Benjamin N. Cardozo School of Law to John Roth, DHS Inspector General (Feb. 6, 2017), *available at* https://www.scribd.com/document/338703826/CCR-complaint (Affidavit of Patricia Freshwater, Affidavit of Michelle L. Saenz-Rodriguez, Affidavit of Jaime Treviño, Affidavit of Martin Valko, Affidavit of Christopher O. Dachniwisky, Affidavit of Daniele Volfe).

[12] *Id.*

[13] *E.g.*, Mark D. Smith, *More Arrivals Detained at DFW Airport, Lawyers Group Says*, FORT WORTH STAR-TELEGRAM, Jan. 31, 2017, http://www.star-telegram.com/news/local/community/fort-worth/article129762034.html; Julieta Chiquillo et al., *Detained Travelers at DFW Airport Are Released, Reunited with Families*, DALL. MORNING

4

fifteen hours after traveling to DFW on a Special Immigrant Visa, awarded to him because of his work with the U.S. army in Iraq.[14] Others detained during that period included a family with a one-year-old and three-year-old whose father was an interpreter for the U.S. army and a family with a child under the age of five.[15]

15. Beginning on January 28, travelers were also detained at IAH in Houston pursuant to the Executive Order. Detainees included green card holders and immigrant visa holders, who were held for hours before being released in the early hours of Sunday morning.[16]

16. Throughout the day on January 29, at least fifty people were detained for some period of hours.[17]

17. Disclosure of the records Plaintiff seeks through this action would facilitate the public's understanding of how Defendants implemented and enforced the Executive Order through the Houston Field Office, including in particular at DFW and IAH. Such information is critical to the public's ability to hold the government accountable.

---

NEWS, Jan. 29, 2017, https://www.dallasnews.com/news/donald-trump-1/2017/01/29/aclu-lawyers-working-free-travelers-detained-dfw-airport-trumps-ban;

[14] Sarah Mervosh et al., *Iraqi in Wheelchair Released After 15-hour Detention at DFW Airport Under Trump's Travel Ban*, DALL. MORNING NEWS, Jan. 31, 2017, https://www.dallasnews.com/news/immigration/2017/01/30/faith-leaders-students-press-reversal-trumps-travel-restrictions-dallas-area-vigils.

[15] *Id.*

[16] *E.g.*, Joe Martin, *Houston Immigration Lawyers Set Up Shop at IAH Following Trump Travel Ban*, HOUS. BUS. J., Feb. 1, 2017, http://www.bizjournals.com/houston/news/2017/02/01/houston-immigration-lawyers-set-up-shop-at-iah.html; Lindsay Ellis et al., *Protests Against Muslim Ban Ripple Across Houston, Packing IAH Terminal to Capacity*, HOUS. CHRON., Jan. 30, 2017, http://www.chron.com/houston/article/Protests-planned-against-Muslim-ban-across-10892379.php; Brenna Daldorph, *The Story of One Resident's Fight to Enter the US After Immigration Ban*, FRANCE24, Jan. 29, 2017, http://www.france24.com/en/20170129-trump-muslim-ban-immigration-lawyer-usa.

[17] Meagan Flynn, *Amid Nationwide Chaos, Protestors Rally at Bush Airport to Support Refugees, Muslims*, HOUS. PRESS, Jan. 30, 2017, http://www.houstonpress.com/news/amid-nationwide-chaos-protestors-rally-at-bush-airport-to-support-refugees-muslims-9154982.

18.     This action is necessary because Defendants have failed to provide Plaintiff with a determination as to whether they will comply with the Request.  Defendants invoked their ability to extend their statutory response time to a total of thirty business days, and more than thirty business days have elapsed since Defendants received the Request.

## JURISDICTION

19.     This Court has subject-matter jurisdiction over this action and personal jurisdiction over the parties under 5 U.S.C. § 552(a)(4)(B), 5 U.S.C. §§ 701–706, and 28 U.S.C. § 1331.

## VENUE

20.     Venue in the Southern District of Texas is proper under 5 U.S.C. § 552(a)(4)(B) as the requested agency records are, upon information and belief, situated within this District at CBP's Houston Field Office, as well as CBP facilities at or near IAH and Houston Airport Port of Entry. Venue is also proper because Plaintiff's principal place of business is in Houston, where its office is headquartered.  For the same reasons, venue also is proper under 28 U.S.C. § 1391(e).

21.     Assignment to the Houston Division is proper for the same reasons.

## PARTIES

22.     Plaintiff is a 501(c)(3) organization dedicated to protecting and defending the individual rights and liberties that the Constitution and laws of the United States guarantee everyone in Texas. The ACLU provides legal representation free of charge to individuals and organizations in civil rights and civil liberties cases, educates the public about the civil rights and civil liberties implications of pending and proposed state and federal legislation, and provides analyses of pending and proposed legislation.

23.     Defendant Department of Homeland Security is a department of the executive branch of the U.S. government and is an agency within the meaning of 5 U.S.C. § 552(f)(1).

24.     Defendant U.S. Customs and Border Protection is a component of DHS and is a federal agency within the meaning of 5 U.S.C. § 552(f)(1).

25. Plaintiff is informed and therefore believes that Defendants have possession, custody, or control of the requested records.

## FACTS

26. On February 6, 2017, Plaintiff sent the Request to CBP's FOIA Officer at CBP Headquarters.

27. The Request sought records regarding CBP's local interpretation and enforcement of the Executive Order at IAH, DFW, and the Port of Entry Offices. The Request expressly did *not* seek information held in the records of CBP Headquarters. Plaintiff incorporates by reference the Request, which is attached as **Exhibit A**.

28. The Request included an application for expedited processing, on the grounds that there is a "compelling need" for these records under 5 U.S.C. § 552(a)(6)(E)(v)(II) because the information requested is "urgen[tly]" needed by an organization primarily engaged in disseminating information "to inform the public concerning actual or alleged Federal Government activity." Ex. A at 9.

29. The Request provided detail showing that the ACLU is primarily engaged in disseminating information within the meaning of 5 U.S.C. § 552(a)(6)(E)(v), given that a critical and substantial aspect of the ACLU's mission is to obtain information about government activity, analyze that information, and publish and disseminate that information widely to the press and public. Ex. A at 9–10.

30. The Request described examples of the ACLU's information-dissemination function. Ex. A at 9–10.

31. The Request also included an application for a fee waiver or limitation under 5 U.S.C. § 552(a)(4)(A)(iii) on the grounds that disclosure of the requested records is in the public interest and is "likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." In particular, the ACLU emphasized that the Request would significantly contribute to public understanding on a matter of profound public importance about which scant specific information

had been made public, *i.e.*, how local CBP Field Offices had enforced, and continue to enforce, the Executive Order. The Request also made clear that the ACLU plans to disseminate the information disclosed as a result of the Request to the public at no cost. Ex. A at 13–14.

32. The Request also applied for a waiver of search fees under 5 U.S.C. § 552(a)(4)(A)(ii)(II) on the grounds that Plaintiff qualifies as a "representative of the news media" and the records are not sought for commercial use, given the ACLU's non-profit mission and substantial activities to publish information for dissemination to the public, as discussed in greater detail in ¶ 30 above. Ex. A at 14–15.

33. CBP received the Request on February 8, 2017. *See* **Exhibit B**.

34. CBP acknowledged receipt of the Request on February 16, 2017. A true and correct copy of CBP's acknowledgement of receipt is attached as **Exhibit C**. The acknowledgement of receipt stated that the request was being transferred to the Department of Homeland Security, Privacy Office, for processing and response. *See* Ex. C.

35. DHS acknowledged receipt of the Request on February 13, 2017. A true and correct copy of DHS's acknowledgment of receipt is attached as **Exhibit D**. The acknowledgment of receipt granted the request for expedited processing. *See* Ex. D.

36. On February 14, 2017, DHS sent a corrected acknowledgment of receipt. A true and correct copy of the corrected DHS acknowledgment of receipt is attached as **Exhibit E**. The corrected acknowledgment of receipt granted the request for expedited processing and fee waiver. *See* Ex. E. The corrected acknowledgment of receipt also invoked a ten-day extension for the request pursuant to 5 U.S.C. § 552(a)(6)(B). *See id.*

37. As of April 12, 2017, more than thirty days (excepting Saturdays, Sundays, and legal public holidays) have elapsed since CBP and DHS received the Request.

38. As of the filing date of this Complaint, Defendants have not notified Plaintiff of a determination as to whether Defendants will comply with the Request.

39. Because Defendants failed to comply with the ten-day extension to the twenty-business-day time limit provision of FOIA, 5 U.S.C. § 552(a)(6)(A)(i) & (a)(6)(B), Plaintiff is

deemed to have exhausted its administrative remedies with respect to the Request under 5 U.S.C. § 552(a)(6)(C)(i).

## Violation of FOIA for Failure to Provide a Determination Within Thirty Business Days

40. Defendants have a legal duty under FOIA to determine whether to comply with a request within thirty days (excepting Saturdays, Sundays, and legal public holidays) after receiving the request and invoking the statutory ten-day extension, and also have a legal duty to notify the requester immediately of the agency's determination and the reasons therefor.

41. Defendants' failure to determine whether to comply with the Request within thirty business days after receiving it violates FOIA, 5 U.S.C. § 552(a)(6)(A)(i) & (a)(6)(B), and applicable regulations promulgated thereunder.

## Violation of FOIA for Failure to Make Records Available

42. Plaintiff has a legal right under FOIA to obtain the specific agency records requested on February 6, 2017, and there exists no legal basis for Defendants' failure to promptly make the requested records available to Plaintiff and the public.

43. Defendants' failure to promptly make available the records sought by the Request violates FOIA, 5 U.S.C. § 552(a)(3)(A), and applicable regulations promulgated thereunder.

44. On information and belief, Defendants currently have possession, custody or control of the requested records.

**WHEREFORE**, Plaintiff requests that the Court award it the following relief:

1. Declare that Defendants violated FOIA by failing to determine whether to comply with the Request within thirty business days and by failing immediately thereafter to notify Plaintiff of such determination and the reasons therefor;
2. Declare that Defendants violated FOIA by unlawfully withholding the requested records;

3. Order Defendants to immediately disclose the requested records to the public and make copies immediately available to Plaintiff without charge for any search or duplication fees, or, in the alternative, provide for expedited proceedings to adjudicate Plaintiff's rights under FOIA;

4. Award Plaintiff its reasonable costs and attorneys' fees; and

5. Grant such other relief as the Court may deem just and proper.

DATED this 12th day of April, 2017.

Respectfully submitted,

  /s/ Edgar Saldivar
Edgar Saldivar
Texas Bar No. 24038188
SD Texas Bar No. 618958
Attorney-in-Charge
AMERICAN CIVIL LIBERTIES UNION OF TEXAS
1500 McGowen, Suite 140
Houston, TX  77004
Tel: 713-942-8146
Fax: 713-942-8966

Kali Cohn*
Texas Bar. No. 24092265
AMERICAN CIVIL LIBERTIES UNION OF TEXAS
6440 N. Central Expressway
Dallas, TX 75206
Tel: 214-346-6577
Fax: 713-942-8966

Attorneys for Plaintiff
ACLU FOUNDATION OF TEXAS, INC.

*Admission to the Southern District pending